Mason *v.* York & Cumberland Railroad Company.

JEREMIAH M. MASON *& als.*, *in Equity*, *versus* THE YORK
& CUMBERLAND RAILROAD COMPANY *& als.*
JOHN B. CARROLL, *in Equity*, *versus* Same *& als.*

A railroad corporation made a contract with M. for the construction of their
road, and gave him a conveyance of their property containing the follow-
ing conditions and provisions: — "*Provided, nevertheless*, that if said cor-
poration or their agents or assigns, pay to the said M. or his assigns, who
shall become the holder or holders thereof, the amounts specified in the
several bonds and coupons for interest pertaining thereto, that shall be is-
sued concurrently with these presents, and such also as shall hereafter be
issued by the directors of said corporation, according to and to satisfy the
terms of the contract existing between said corporation and said M., bear-
ing date, &c., for the construction and equipment of said railroad, as by
reference to said contract and the records of said company will fully ap-
pear; each of said bonds being numbered consecutively, from one to the
sum total thereof, requisite for the completion of said road, according to
said contract, and each being issued only by the previous specific vote
thereof of the said directors, at their meeting duly notified; and if said
payments shall be made, as the same shall respectively become due, ac-
cording to the terms of said bonds and coupons; and if said contract shall
also be fully performed by said corporation, in all other respects, then this
deed shall be null and void thereafter, otherwise the same shall remain
good and in full force. And it is further provided and a condition of this
deed, that the possession and uses of said premises shall at all times re-
main in the said grantors, so long as payment shall be made promptly and
in good faith by said grantors, of said several bonds and of the coupons
pertaining thereto as the same shall become due or payable, but upon fail-
ure thereof for the term of sixty days, the holder of said bonds or of any
one or more thereof, shall be and hereby is authorized and empowered to
take full and complete possession of said premises and mortgaged property,
personal and real, rights of way and corporate franchise, without hindrance
or process of law, for the common and joint benefit and the use of the
holders of all the bonds so previously issued, and whether payment then be
due or not, and in satisfaction thereof, and such holders shall share and
share alike in the disposition and sale of the same for that purpose by pub-
lic vendue, on reasonable public notice given thereof, to the grantors afore-
said, first deducting from such proceeds all costs and expenses incident to
such possession and sale." — *Held* : —

1. That the conveyance was not a deed in trust, but a mortgage;

2. That after a transfer by M. of any bonds of the corporation, he held the
legal title as mortgagee for his remaining interest, and in trust for the other
bondholders;

3. That the contract was secured by the mortgage;

Mason *v.* York & Cumberland Railroad Company.

4. That the bonds have priority in payment from the avails of the mortgaged property, over the contract;

5. That the conveyance contains no valid power of sale of the mortgaged property;

6. That a sale by the mortgagee of all his "right, title and interest" in the mortgage, and a judgment recovered by him against the corporation, for non-fulfilment of the contract, is an assignment of the mortgage; and the assignees hold the estate in the same manner as he held it;

7. That subsequent conveyances by the railroad corporation cannot affect the rights acquired by virtue of the mortgage;

8. That the Court will not determine what particular bonds are secured by the mortgage, until the coming in of the report of the master, to whom the case will be sent for that purpose;

9. That bonds, not "issued by the previous specific vote of the directors," but afterwards ratified and approved by the corporation, and received by M. and applied in accordance with the terms of the contract, are secured by the mortgage;

10. That the claim of an indorser of company notes, the avails of which were applied in part payment of the contract, is not secured by the mortgage;

11. That one bondholder may maintain a bill in equity to enforce payment of the bonds, in his own name, but for the benefit of himself and all other bondholders;

12. But that, in such a case, the Court cannot properly examine and determine the rights of one claiming an interest in the judgment on the contract, as *equitable* assignee, or as having an *equitable* lien upon it.

The plaintiffs in a bill in equity may discontinue on payment of costs; or without costs, if they are not claimed by the respondents.

When a plaintiff in equity parts with all his interest in the subject matter of the suit, the case can be no longer prosecuted in his name; but the assignee must make himself a party by an original bill in the nature of a supplemental bill.

*It seems,* that the report of a master in chancery is conclusive, as to all the facts passed upon by him.

BILL IN EQUITY, heard on bill, answer and proof.

The original bill makes Jeremiah M. Mason and others plaintiffs, and the York & Cumberland Railroad Company, John G. Myers, and William Willis, James C. Churchill and Nathan L. Woodbury, defendants.

The bill then alleges that, on the sixth day of February, 1851, said corporation made a mortgage of its property to said Myers, and sets forth said deed in words and figures, the material parts of which are stated in the opinion.

The bill then alleges that said mortgage was duly recorded, and, that at different dates, between the first day of February and the first day of July, 1851, there were issued by said corporation, according to and to satisfy the terms of the contract existing between said corporation and said Myers, bearing date the fifth day of February, 1850, and as modified in writing on the sixth day of February, 1851, sundry bonds for the payment of the sums of money specified in said bonds, and for the interest on the same semi-annually, as specified in said bonds and coupons accompanying the same, and that said bonds and coupons were duly issued by said corporation, and that they were and continued to be secured by said mortgage and a part of the bonds therein specified.

The bill then sets forth a description of the bonds held by each one of the plaintiffs.

The bill then alleges that said amounts due for interest have been duly demanded at the office of said company, as said interests respectively became due, and payment refused by the company and by the treasurer of the same; that said corporation is wholly insolvent and irresponsible and destitute of means to pay the said interest and bonds as they mature, and that the only mode in which payment can be obtained of said bonds and interest is by a resort to the property, conveyed in said mortgage, to secure the same; and that said property is becoming daily deteriorated and destroyed and wasted by the acts and omissions of said defendants.

The bill then alleges that the aforementioned bonds constitute the principal part of the debt outstanding, and secured by said mortgage, and that the complainants are owners of all the bonds and debts known with certainty by them to be existing and outstanding under said mortgage, and that they believe and allege that if any other bonds secured by said mortgage are in existence and outstanding and not paid or cancelled, they are of small amount and not in the hands of persons within this State, or subject to the

process of this Court, and prays, if it should appear that any such other bonds are in existence, and in the possession of persons subject to the jurisdiction of this Court, they may have leave to join such other persons as parties plaintiff, or parties defendant to the bill, whenever the existence of such persons shall be made known, and whenever at any stage of the proceedings, it may appear to the Court necessary.

The bill then alleges that said Myers, who is named as trustee and mortgagee in said mortgage, has neglected and refused, and still neglects and refuses to take any steps to protect the rights of the bondholders aforesaid, under said mortgage, and has refused and neglected and still refuses and neglects to call a meeting of the holders of said bonds, for the purpose of organization, as provided by the 51st chapter of the R. S. of the State, although requested so to do by said bondholders.

The bill then alleges that, on the first day of January, 1857, said Myers made and executed a deed to James Hayward, William Willis, and James C. Churchill, whereby said Myers conveyed to said Hayward, Willis and Churchill, their survivors and successors, all the right, title and interest of him, the said Myers, in and to the aforesaid mortgage by said corporation to him, the said Myers, they, the said Hayward, Willis and Churchill, assuming the responsibilities of him, the said Myers, by virtue of said deed, to other persons, and refers to *said deed* for proof of the same, which said complainants pray may be produced by the defendants, and that said deed, when produced, may be taken as a part of said bill.

The bill then alleges that said Hayward declined said trust, and refused to accept the same or to take delivery of said deed, and that, by operation of said deed and of law, the said Willis and Churchill became and claimed to be the successors of the said Myers in the said trust under said mortgage, and subject to the responsibilities and liabilities created by virtue thereof; or that if said trusts, powers and

responsibilities under said mortgage did not pass to, and vest in said Willis and Churchill, by virtue of said deed and of their acceptance and action under the same, then the same, or such part of the same as did not pass to and vest in said Willis and Churchill, remains in said Myers.

The bill then alleges that said Willis and Churchill associated with themselves said Woodbury, as a co-trustee, and that said Woodbury has claimed and still claims to act as a co-trustee with said Willis and Churchill, and that he has, jointly with said Willis and Churchill, entered into certain contracts and arrangements with reference to said road, and the construction of the same, and the extension of the same, and the issue of certain bonds, assumed and claimed to be secured by a subsequent mortgage on said railroad and its appurtenances.

And alleges that said corporation and said trustees, or persons claiming to be trustees, and the said Myers, have entered into certain contracts and arrangements, the precise terms and conditions of which are not known to the complainants, but which said complainants pray may be fully described and set forth by said defendants, in their answer, by virtue of which said Myers, under the authority and with the consent of said Willis, Churchill and Woodbury, and of said corporation, has been and still is in possession and control and use of said railroad and the property described in said mortgage, and claims to hold the same and receive the earnings and profits of the same, either directly under the authority of certain contracts made with said Myers by the other defendants or some of them, or under such contracts made by the other defendants, with said Myers and with one John Hosey, and with sundry other persons, whose names are unknown to the said complainants, but all whose rights and interests and claims, as they are informed and believe, have been assigned to and are vested in said Myers.

The bill then alleges that the defendants, in violation of the rights of the complainants as holders of said bonds, and

in violation and in fraud of the trusts, responsibilities, and liabilities of the said Myers under said mortgage, and of the said Willis, Churchill and Woodbury, who, if they have succeeded to any right or title under and by virtue of said conveyance from said Myers, have taken the same with full knowledge of and subject to all the trusts, responsibilities, and liabilities of said trusts and mortgage, and charged with said trust, have not applied the earnings and profits of the said road and of said mortgaged property to the payment of the interest due and unpaid· upon said bonds and under said mortgage, but have suffered and are now suffering the same to be used and expended by said Myers, for his private purposes, and to be used to pay the coupons issued in connection with certain bonds of said corporation, purporting to be issued by a mortgage of said property, subject and subsequent to the mortgage given to secure the aforesaid bonds of said complainants.

And then the bill alleges that the said Myers, and Willis, and Churchill and Woodbury, have continued to act and still do act in total disregard of the rights and interests of the holders of the bonds secured by said first mortgage, and of the responsibilities and liabilities imposed upon the trustees under the same, and do not and will not take any steps to enforce said mortgage or to foreclose the same, and that, notwithstanding the interest due upon the aforesaid bonds held by the complainants has remained unpaid for so long a time, they have been and are applying the earnings of said road to the discharge of other liabilities of said corporation not secured by said mortgage, in violation of the rights of said complainants, and have been and are suffering said railroad and its furniture and equipments to fall into decay and become greatly depreciated and deteriorated in value, so that, by reason of the acts, refusals, omissions and neglects of the said defendants, the complainants are losing their security in part, and are in danger of losing the whole, notwithstanding the said defendants have received and are receiving large sums from the receipts of said road, which earnings

and expenditures the complainants pray that the said defendants may severally set forth, so far as to render a full, exact, and true account of all the same since the time of the execution of the deed from said Myers to said Willis, Hayward and Churchill.

The bill then alleges, in the usual form, that said actings, doings and pretences are contrary to equity and good conscience, that they are injurious and oppressive, and that the complainants are remediless according to the strict rules of the common law, and can only have relief in a court of equity.

The bill then prays that the defendants, upon their several and corporal oaths, may make answer to said bill, in the usual form of said bills, and that said defendants may come to a fair and just account of all the earnings and receipts from said property thus held in mortgage and trust, since the date of said conveyance to said Willis and others, and that a receiver may be appointed by the Court to receive and take charge of the said mortgaged property, and of the earnings and income of the same, and to apply the net earnings and income of the same to the payment of so much of said mortgage debt, and of said bonds and interest, as is now due or may hereafter be due and unpaid, and that a trustee may be appointed by the Court in place of the trustee named in said mortgage, and in place of the other defendants, who claim to have succeeded to the rights of said trustee, and that the other defendants may be decreed to convey their interests in said mortgaged property to said trustee, or to the receiver so appointed by said Court, so far as may be necessary for the effectual carrying out of the trusts, and realization of the securities of said mortgage, and that the said trustee may be authorized by the Court with a power to sell and dispose of the said mortgaged property and with all the powers of sale and disposition, if any, embraced in said mortgage ; and that the said defendants, their servants and agents, and all other persons, may be enjoined from paying over or disposing of any of said

mortgaged property, or the earnings or income or receipts of the same, except under the order of the Court, or to the trustee or receiver appointed by the Court; and for such other and further relief as the nature of the case may require.

Then follows a prayer for a writ of injunction from the Court accordingly; and for the ordinary process by subpœna.

To the bill was appended the *jurat* of John W. Lane, one of the complainants, in the usual form.

The original bill was entered at the January term, 1860, when the defendant Myers was defaulted. The bill was ordered to be taken *pro-confesso* as to said Myers on the 36th day of the term. The answer of the York & Cumberland Railroad Company and of said Willis, Churchill and Woodbury, was filed on the 35th day of said term.

Joseph C. Noyes was appointed receiver, January term, 1860.

At the October term, 1860, Jabez C. Woodman appeared for said Mason and MacDonald. On the same day, Smith, one of the complainants, claimed to discontinue, and his counsel withdrew their appearance.

At the January term, 1861, on the 21st day, the general replication was filed.

On the 27th day of May, Shepley & Dana, in behalf of all the complainants except said Mason and MacDonald, filed their motion in which they alleged that said Mason and MacDonald had disposed of their bonds and were not interested in the suit, and praying that said bill might be dismissed without prejudice.

On the 5th day of June, 1861, John B. Carroll filed his petition for leave to file a supplemental bill, and subsequently had leave to file his supplemental bill, upon giving bond to the other plaintiffs, to be approved by some Justice of the Court, to prosecute the suit at his own expense, and indemnify and save them harmless from any and all liabilities for costs or expenses accruing afterwards.

On the 13th day of June, 1861, said Carroll filed his bond, and with the permission of the Court his supplemental bill. On the same day, Edward H. Daveis, Charles Q. Clapp, and Levi Morrell, appeared and took notice of said bill and acknowledged service, by Edward H. Daveis and George Evans, their solicitors. The original defendants also appeared and acknowledged service, by George Evans, their solicitor, on the same day.

The supplementary bill and bill of revivor by John B. Carroll recites the original bill, its allegations, charges and prayers. It then alleges that the writ of subpœna was issued on the 22d day of December, 1859; that it was duly served and returned into the Clerk's office, January 4th, 1860; that, at the January term, 1860, the joint and several answer of said corporation and of James C. Churchill, Nathan L. Woodbury and William Willis to said bill was made and filed on the 35th day of the term, and that, on the next day, the default of said Myers was recorded and the bill ordered to be taken *pro-confesso*, as to said Myers; that Joseph C. Noyes was appointed a receiver in said case, according to the prayer of said bill; that the decree appointing said Noyes was filed on the sixth of March; that a commission was issued to the receiver on the 13th of March, 1860; that all the property described in said mortgage now in existence, and the receipts and income of the same, save the necessary disbursements incident to the same, have been in the hands of said receiver since his commission issued, subject to the order of this Court.

It then alleges that, since the filing of the original bill, the said Mason and MacDonald, for a valuable consideration, have sold and transferred the six bonds, numbered two, three, four, five, six and seven, with the coupons pertaining thereto, and that, since the filing of said bill, the said Carroll, for a valuable consideration, has become the purchaser of said six bonds with the coupons pertaining thereto, and that he is now the holder, owner, and assignee of said six bonds and coupons.

The complainant then claims that, by the purchase of said bonds and coupons, he is entitled to have said bill of complaint continued, and to prosecute the same against the defendants in his own name, and to have all the benefits of said bill in the same manner and to the same extent as the said Mason and MacDonald might have had, if they had not sold and transferred said six bonds and the coupons pertaining thereto.

The complainant then alleges that he is informed and believes the bonds that were issued according to and to satisfy the terms of the contract, existing between said corporation and said Myers, bearing date the fifth day of August, 1850, and as modified in writing on the sixth day of February, 1851, were exceedingly numerous, being to the number of one hundred and sixty-six, and all of them secured by said mortgage to said Myers.

The bill then alleges that all of said bonds were payable to the bearer thereof, negotiable in form, and passing from hand to hand by delivery; that he has no knowledge who are the owners and holders of any of said bonds, except the six aforesaid, which belong to him; that he does not know how many of said bonds are outstanding, believes they are exceedingly numerous, and that he has no means of knowledge who were the owners and holders of said bonds or any of them, at the time the original bill was commenced, except as he sees the matter stated in said bill.

The complainant then alleges, it would be impracticable for him to make all the holders and owners of said bonds and coupons, parties to this bill by name, because said holders and owners are unknown, because of their numerousness, and because the bonds are negotiable in form.

He then prays that the original bill may be so far amended that he may be allowed, either in company with the other complainants, or so many of them as may continue to prosecute the bill, or otherwise in his own name, to maintain this bill, in behalf of himself or themselves, and also in behalf of all other persons that may be holders and own-

ers of said bonds and coupons, or any of them, who shall come in and prove their claims, become parties and contribute to the expense of this suit, at any time before the final decree.

The complainant then avers that he has been informed, and verily believes, that said corporation, by their deed of mortgage and trust, on the first day of November, 1851, conveyed to one Toppan Robie, one John Anderson and one Nathan Clifford, all the property of said corporation, including the franchise thereof, that was embraced in the aforesaid deed of said corporation to said Myers, and offers to produce said deed; and further represents that, agreeably to the provisions of said deed, Charles Q. Clapp, Edward H. Daveis and Levi Morrell, have been duly and legally appointed successors to said Robie, Anderson and Clifford in said trust, and claim to hold said franchise and other property in accordance with the provisions of said deed, and claim to have the right to redeem the same from the mortgage made by said company to said Myers, and to have other and important interests in said property, liable to be affected by any decree which this Court may make in this case, and that they have commenced a bill in equity, now pending in this Court, against said corporation and others, to which the complainant refers, as setting forth more fully the ground of their claim.

The complainant then prays the process of the Court against said Clapp, Daveis and Morrell, and that they may be required to appear and answer thereto as they may be advised.

He then prays that the original defendants may be required to answer to the matter alleged by way of supplement and amendment, and that the complainant may have the same benefits of said bill and proceedings against the defendants as the said Mason and MacDonald were entitled to have under the original bill and before they assigned their bonds, with the addition of the supplementary matter and amendments aforesaid.

Mason *v.* York & Cumberland Railroad Company.

The answer admits the contract with Myers, the mortgage to him, and the issuing of bonds (known as the "Emery bonds") to the amount of $95,500, and no more; it denies that some of the bonds (known as the "Herrick bonds") held by some of the plaintiffs, were ever authorized by the corporation, or legally issued; it alleges that the plaintiffs became the owners of their bonds long after they were dishonored and subject to certain defences; that Myers had recovered a judgment for breach of the contract amounting to some $165,000; that Myers had taken possession of the mortgaged property for breach of the condition and had sold it, by virtue of a power of sale contained in the mortgage, to one Amos Finch; [that other proceedings took place which do not become material in the view taken of the case by the Court;] that the judgment in favor of Myers had been assigned to said Willis, Churchill and Woodbury, as well as the interest of Myers in the mortgage; that, on the first day of January, 1857, the company conveyed to them in mortgage and in trust all its property; it denies that the defendants are in possession or are liable to account to the plaintiffs; it admits the non-payment of interest as alleged in the bill, and substantially all the new allegations in the supplemental bill; and it alleges other matters not material in the view of the case taken by the Court.

So much of the documentary evidence as is material is given in the opinion.

It was admitted, among other things:—

1. That the documents and papers of which printed copies are filed by the respondents, as proofs and exhibits, were duly signed and executed by the parties thereto, respectively.

2. That the deeds and contracts so filed, purporting to be the deeds and contracts of said railroad company, were executed by the proper officers of said company, duly authorized thereto by votes of the directors of said company, at meetings duly held for that purpose.

3. That said Myers recovered judgment against said com-

pany in a suit commenced by him as set forth in the answer of said respondents.

4. That said Myers advertised and sold at public auction, as set forth in his deed to Finch, all his right, interest and property in the premises, described in the deed of mortgage to him.

*J. C. Woodman,* for Carroll, submitted an elaborate argument in support of the following propositions: —

I. The deed to Myers is a deed of mortgage and of trust. He held the estate for himself and. in trust for the other bondholders.

II. All the necessary parties are before the Court. As the bondholders are numerous, and continually changing, and many of them are unknown, Carroll may maintain the suit in his own name for the benefit of them all.

III. Myers had no authority by virtue of the mortgage to sell the mortgaged property.

IV. By the conveyance of Myers to Finch, and of Finch to the defendants, and. of Myers to the defendants, they succeeded to Myers' rights and duties, and became the holders of the estate in trust.

V. The contract with Myers was not secured by the mortgage.

VI. If it was secured by the mortgage, Myers lost his lien by the sale to Finch.

VII. The Court will send the case to a master in chancery to ascertain what bonds were legally issued and are secured by the mortgage.

*Evans,* for respondents.

The case comes before the Court, upon the original bill of Mason and others — the supplemental bill of Carroll — and the answers thereto — and upon exhibits, documentary proofs, agreements and admissions of Mason and MacDonald, original plaintiffs, and of Carroll.

All parties in interest, it is believed, are before the Court. The plaintiffs claim to be holders of certain bonds issued

by the Y. & C. R. R. Co., secured by a deed of mortgage to Myers which is set out at length.

The answers admit the validity of the deed, and admit the issuing of certain bonds secured by it, which bonds so admitted are accurately described. They deny that any other bonds than those so described—those signed by Emery as treasurer—are the bonds of the company or covered by the mortgage. They do not admit that the plaintiffs are holders of any of the bonds so admitted to be secured—and call for proof. The answer is responsive to the bill, in these respects, and renders proof of the allegations incumbent on plaintiffs.

Mason and MacDonald, and their successor Carroll, have filed the bonds held by them as exhibits, and they are among those admitted to be the bonds of the company and secured by the mortgage. The bill alleges, and the answers admit that the interest due upon these bonds has not been paid since February 10, 1856, and it is also admitted that the holders of these particular bonds have been in no way privy or assenting to any proceedings heretofore had and set forth in the answer, affecting in any way the rights of the holders.

So far, therefore, as the bonds now held by Carroll are concerned, it is not perceived that the denials of the answers in this respect are not overcome—and that Carroll is not entitled to such equitable interposition as the case made authorizes, and as is within the power of the Court to grant.

The bill alleges and the answers admit a conveyance from Myers of the mortgaged property, dated January 1, 1857, to Hayward and others, trustees, and subsequent conveyance of the same to Woodbury and Willis, and certain agreements of the trustees with Wood and Myers and one Hosie, all of which it prays may be produced and made part of the bill. They have been produced and are among the exhibits, and are to be taken as a part of plaintiffs' bill.

The answer sets forth other proceedings and conveyances from Myers to Finch, and from Finch to Churchill and others, copies of which are filed among the proofs, and are ad-

mitted to have been duly executed and authorized by votes of the company or the directors.

The bill alleges and the answers admit that the company is insolvent and unable to pay its debts, for which purpose resort must be had to the mortgaged property.

The answers allege a conveyance in trust by the railroad company to Hayward and others, January 1, 1857, and, by subsequent conveyances, the transmission of this trust-estate to Churchill, Woodbury and Willis, of which due proof is made by the production of the deeds and admissions in the case.

No proof has been offered that any other bonds, admitted to be the bonds of the company, are held by any of the plaintiffs, nor has any proof been offered that any bonds alleged in the bill to be held by the plaintiffs, other than those admitted, are bonds of the company or obligatory upon them, or covered by the mortgage.

In all these respects, therefore, the answer being responsive, must stand.

The decree must be against the validity of such other bonds for want of proof, and against the asserted lien or trust in their behalf.

The questions arising on this state of the case, are:—

1. The construction of the deed to Myers.

Does it give priority to the bonds which were issued in pursuance of it, over the contract with Myers also secured by it—or, if the mortgaged property be insufficient to pay the whole of both descriptions of indebtedness, is it to be appropriated *pro rata* to the payment of bonds and contract?

We maintain the latter proposition. It results from the language of the deed. Both are secured and no priority given.

Churchill and others, trustees, are assignees of the judgment obtained by Myers against the company, for violation of his contract, and are therefore entitled to stand on the same footing of equality as those bondholders who may sustain their lien.

2. The effect of the sale at public auction by Myers to Finch, July 29, 1856, upon the bonds then held by persons privy to and assenting to such sale.

By examination and comparison of the documents, it will appear that the then holders of all the bonds described in the original bill of Mason and others were so privy and assenting, except those now held by Carroll, and possibly that held by Goddard, one of the plaintiffs, being $500. only.

The effect of this assent and agreement to extend credit was, it is contended, to discharge the lien created by the deed, if any ever was created in their favor. The consent and agreement was good and valid; the proviso, that it should not impair the lien, was repugnant and void. The doing of that which they consented should be done, to wit, the sale of the property, necessarily effected what they desired should not be done, viz., the displacement of their lien. If not so, it might operate a great fraud on purchasers.

The bill is framed to enforce " an *equitable lien* growing out of a constructive trust" *under the deed to Myers.* It is not brought to enforce any rights secured to the plaintiffs under the *deed to Finch*, or under Finch's mortgage to Myers.

The holders of the bonds, near $400,000 in amount, issued under the deed to Robie and others, a large portion of which are held by Churchill and others, trustees, claim priority of right to those who claim under the Finch deeds — and hence the necessity of determining the effect of the sale by Myers, upon the bonds assenting thereto. If their assent to that sale did displace their lien, the Robie bonds would have priority to those issued to Myers, and admitted to be valid and covered by the mortgage, — and would displace the bonds alleged to be held by Foster, amounting to $5,000, and the bond alleged to be held by Dyer, $1,000, leaving only the bonds now held by Carroll, ($6,000,) and that alleged to be held by Goddard, if found valid upon due presentment of it, to be first provided for. If this should be the result reached, viz. : that the privity of the holders

of the bonds represented in the bill as belonging to Foster and Dyer, plaintiffs, to the sale by Myers, displaced *their* lien, then the Robie bonds would have priority to all except to those now held by Carroll and to that held by Goddard, if of the class, and to the Myers judgment, if that be held to have priority, as we contend it has.

The bonds have not yet expired; and to meet the arrears of interest on the bonds having priority, and to be first provided for, a sale of the road would probably not be necessary.

All the other bonds alleged in the bill to be held by other plaintiffs, which are not admitted by respondents to be obligatory on the company, would also be excluded from priority, even if they were proved to be valid, as they were all held by persons assenting to the proceedings of Myers in the sale.

Having determined these questions of priorities, and the rights of the several classes having liens, it can then be ascertained in what mode their several claims can be best protected or satisfied. It is believed that no decree of sale will be necessary or proper, until these questions are determined, and then only, upon condition that, within a reasonable time fixed by the Court, the liens of the plaintiffs are not extinguished.

The opinion of the Court was drawn by

APPLETON, J. — The rights and duties of the parties to this litigation can be best understood and most satisfactorily determined, by recurring to and examining, in the order of their execution, the several deeds and contracts in and by virtue of which they have their origin.

On the 5th August, 1850, John G. Myers & Co., entered into a contract with the York and Cumberland Railroad Company for the construction and equipment of their road, which was further modified, in writing, on 6th Feb., 1851, when said Myers became the sole contracting party with the corporation.

· On the same 6th Feb., 1851, the defendants made and executed to Myers a deed, upon the construction and effect of which the rights in controversy mainly depend.

(1.) In the *matter of the bondholders of the York and Cumberland Railroad Co.*, 50 Maine, 552, it was determined that the conveyance to Myers was not a deed in trust, within the meaning of R. S., 1857, c. 51, § 53, but that it was a mortgage, and that Myers thereby acquired only the rights and was subject only to the liabilities of a mortgagee.

It was further held that, upon and after a transfer by Myers of the bonds of the corporation or any portion of the same, that he held the legal title as mortgagee for his remaining interest, and in trust for those to whom he had transferred the bonds.

(2.) The consideration of the mortgage from the railroad company to Myers, is expressed to be "the sum of one dollar, paid by the said John G. Myers of Portland, in said county, * * * in consideration of the stipulations contained in the contract of said Myers," &c. The condition is "that, if said corporation, or their agents or assigns, pay to the said Myers or his assigns, who shall become the holder or holders thereof, the amounts specified in the several bonds and coupons for interest pertaining thereto, that shall be issued concurrently with these presents, and also as shall hereafter be issued by the directors of said corporation, according to, and to satisfy the terms of a contract existing between said corporation and said Myers, bearing ·date the fifth day of August, A. D. 1850, and as modified, in writing, on the sixth day of February, A. D. 1851, for the construction and equipment of said railroad, as by reference to said contract and the records of said company will fully appear ; each of said bonds being numbered consecutively, from one to the sum total thereof, requisite for the completion of said road *according to said contract*, and each being issued only by the previous specific vote thereof of the said directors, at their meeting duly notified ; and, if said payments shall be made as the same shall respectively become

due according to the terms of said bonds and coupons ; *and, if said contract shall also be fully performed by said corporation, in all respects, then this deed shall be null and void thereafter, otherwise the same shall remain good and in force.*"

Myers had contracted to build the road. It was a matter of justice that he should be secured for the labor he might perform and the advances he might make. The bonds were to be issued to him in part payment of his contract. If issued, the contract would be discharged to the extent of the bonds received, and the indebtedness of the corporation would be upon their bonds and the contract, so far as it remained unpaid. If not issued, it would be upon the contract. In either event, the corporation would be debtors and should secure their liabilities. The language of the deed is clear and precise. It expressly secures in terms the construction contract. To hold that it was not thereby secured would be at war with the plain language of the deed and the just and obvious intentions of the parties. It would be to strike out an essential condition, which the parties have deliberately inserted in their deed.

(3.) While it is thus clear that the payment of the construction contract is secured by the mortgage of the corporation to Myers, the question arises, whether the bondholders have priority over the construction contract, in the payment of their bonds, or whether all the debts secured by the mortgage are to be paid *pari passu.* Were the corporation solvent, the inquiry would be of little moment. It is only because of its insolvency that it becomes material.

As the contract was made with, and the mortgage given to Myers, and, as the bonds were issued to him in reduction of his claims, he must be deemed as conusant of the terms and conditions of each and as assenting thereto. As long as the contract and bonds remain in his hands, the priority of right and the appropriation of payments are alike immaterial to both of the contracting parties. It is only when the bonds are transferred, that the question at once springs into importance.

The bonds, by the terms of the construction contract, are to be issued in part payment thereof. They are to be issued to Myers. Until so issued, the contract is secured by the mortgage. After they have been issued, the security of the mortgage attaches to them.

It was desirable, both to the corporation and to Myers, that the bonds issued should be saleable in the market. This was especially important to Myers, because he would thus be enabled, from their sale, the more readily to raise the funds necessary for the completion of his contract. The value of the bonds in the market would depend upon the probability of their payment, and this would be materially affected by the security pledged for such payment.

The contract was so made, the mortgage so written, the bonds so prepared, that they (the bonds) should be available in the market and readily command purchasers. By § 11, of the construction contract of February 6, 1851, the bonds issued by the railroad company are to be secured "by mortgage of all the real and personal property of said company," with certain exceptions, &c., and "freed of all other and all prior incumbrance or lien whatever, excepting existing bonds to indemnify the present liabilities of the directors, &c. And no other indebtedness shall be created by said company *to affect the credit of said bonds or prejudice their priority of payment, or acquire any concurrent lien* upon the property so mortgaged. The bond certificates recite that, "for the security of said promise, (in the bond,) the property of the road, real and personal, is pledged, *exclusively* and unincumbered by any previous indebtedness, in the manner set forth in the statement annexed hereto." By the annexed statement it appears that the issuing of bonds is restricted as therein stated, and that "the bonds so issued have a lien by mortgage, preceded by no other lien, upon the entire property, real and personal, of the company." "The bonds," according to the statement, are "secured by a mortgage of the entire property of the company out of Portland," and represent no credit separated from the tan-

gible and otherwise unincumbered property of the road." In the mortgage to Myers, in the last clause, provision is made for the distribution of the proceeds of the sale of the property mortgaged, among the bondholders only, "share and share alike."

It is apparent, by the acts and recitals of the railroad company, that it was their intention that the bonds should be secured by mortgage, and that they should have the precedence over all other claims; that there should neither be prior nor concurrent lien upon their estates, so as to diminish in any degree the acknowledged priority of the bondholders. That Myers must have so understood it cannot be doubted. Indeed, in his letter of August 7, 1856, as well as in the arrangements made when his mortgage was transferred to James Hayward, William Willis and James C. Churchill, this precedence of the bondholders and their right to the priority of payment is recognized.

The bonds are delivered to Myers. He sells them in the market. He sells them as they appear on inspection. He adopts what they say. He says they are secured as they are described to be. The representations on the face of the bond certificates are material and affect their price. It would be a fraud on those to whom Myers has transferred them, to permit him to claim as *against* the bondholders *a concurrent lien* for his construction contract.

The result is, that the contract and the bonds are secured by the mortgage to Myers, but, in marshalling the assets of the corporation arising from the mortgaged property, the bondholders are *first* to be paid, "share and share alike." The contract is next to be paid. This construction gives effect to all the words of the mortgage. It protects the just rights of all. It secures the bondholders to the full extent of all their claims. It secures Myers. The corporation have no cause of complaint. Justice is done to all.

(4.) It is insisted that the mortgage to Myers confers a

power to sell by reason of the following clause therein contained:—

"And it is further provided, and a condition of this deed, that the possession and uses of said premises shall at all times remain in the said grantors, so long as payment shall be made promptly and in good faith by said grantors, of said several bonds and of the coupons pertaining thereto as the same shall become due and payable, but upon failure thereof for the term of sixty days, *the holder of said bonds or of any one or more thereof, shall* and hereby is authorized and empowered to take full and complete possession of said premises and mortgaged property, real and personal, rights of way, and corporate franchise, without hindrance or process of law, for the common and joint benefit and the use of the holders of all the bonds so previously issued, and whether payment be then due or not, and in satisfaction thereof, and *such holders shall share and share alike in the disposition and sale of the same* for that purpose by public vendue, on reasonable notice given thereof, to the grantors aforesaid, first deducting from such proceeds all costs and expenses incident to such possession and sale."

It is in proof that Myers, on July 29, 1856, proceeded to sell whatever he might lawfully sell under and by virtue of his mortgage to one Finch, who, January 1, 1857, transferred whatever he acquired by Myers' deed to Hayward and others as trustees.

It is not pretended that the mortgage to Myers has been foreclosed. The legal estate was conveyed to him as mortgagee and not otherwise. As such he had no right to sell. The power to sell, if given, is given by the clause under consideration.

The power of sale in a mortgage, when carried into effect, defeats the right of redemption. Its existence is not to be inferred unless the inference is unavoidable. The language giving it should be clear. Its meaning should be obvious. The power should be such that it can be carried into effect. The persons, by whom it is to be done, should be named.

In the case before us, the alleged power, if conferred upon any one, is conferred upon *any* bondholder as such. The power is given to no one specifically. The bondholders are perpetually changing. Such a power is void from its very indefiniteness. There is no appointee. If one may sell, so may another. If one wishes to sell and the others do not, the exercise of the power of sale cannot be prevented. The sale may be made, though against the interests and notwithstanding the protestations of all but the bondholder selling. The power to sell, if incident to the ownership of a bond, will pass by its transmission. No provision is made for, no restriction is imposed upon the exercise of this power. Each may sell. The number of persons thus having the right to dispose of the estates mortgaged is coextensive with that of the bondholders. The bondholders may severally proceed to sell, but, if at the same time and at different places and upon different terms and conditions, who, of the bondholders thus selling, will confer a valid title upon the purchaser?

The power of sale is not given in terms. It is not necessarily to be implied from the terms of the mortgage. A power, such as must be assumed to exist, to give validity to the sale, would be void from the indefiniteness of the persons upon whom it is conferred and from the impossibility of its execution.

No estate whatsoever is conveyed to the bondholders as such. The fee is conveyed to Myers in mortgage. The bondholders, as such, have no estate in the possession of which they can enter or which they can sell. It is in Myers as mortgagee.

(5.) The sale of the corporate franchise and of the mortgaged estate of the corporation being invalid, it becomes necessary to determine where the legal title of the mortgage may be, and whether the estate, in those in whom the title is now vested, is to be charged with the trust arising from the transferrence of the bonds, as we have seen it would be while it remained in Myers.

On the 1st Jan., 1857, Myers assigned and transferred, by deed, to James Hayward, William Willis, and James C. Churchill, all his " right, title and interest in and to the following described deeds, bonds, judgments, debts and claims, viz. : — To a mortgage made by said corporation to me, bearing date Jan. 6, 1851, *they assuming my responsibilities and liabilities by virtue thereof to others.* Also a judgment recovered by me against said corporation," &c., &c. The judgment assigned was for damages for the non-fulfilment of the contract referred to in the mortgage.

By this conveyance the mortgage and the contract thereby secured passed from Myers to the assignees therein named.

The bondholders, it has been seen, were protected by the mortgage. The mortgagee, after the assignment of his bonds to the holders thereof, held the legal estate in trust for their benefit. The mortgage has not been discharged. Its terms are clear. The assignees are affected with notice thereof. They took the legal title with full notice of all subsisting equities, and they cannot be permitted to hold it discharged from existing trusts. In accordance with these views was the decision of this Court in *Moore* v. *Ware*, 38 Maine, 496, where it was held that, where one or more notes are given, secured by a mortgage of the maker, the mortgagee holds the estate, when one of the notes is transferred, in trust for its security ; and that the mortgage is in itself notice to the assignee of the trusts chargeable upon it, notwithstanding he may not know to whom the note may have been assigned.

It results, therefore, that, as between the bondholders and these assignees of the mortgage, they hold the estate as it was held by Myers, their assignor, and subject to the same trusts as when in his hands.

(6.) As the mortgage to Myers is subsisting in the hands of the assignees, with the trust in favor of the bondholders undischarged, all who are thereby secured, are equally entitled to the security which the mortgage gives. The lien of all is to be protected. The assent of Woodman and others no way injuriously affected or diminished their rights.

A distinction, too, between the Herrick bonds and the Emery bonds has been suggested. All bonds issued under the construction contract are secured by the mortgage. They, if received under it, were received in payment and reduced the amount due upon it. So, too, the rights of *bona fide* holders are always to be regarded and enforced.

But the rights of the different bondholders are not now to be determined, for the facts which create a supposed distinction are not before us, and a settlement of these conflicting rights, if conflict there be, would be premature.

The facts can be ascertained by a master after due notice to all interested, and, if there be any dispute as to the law, a further hearing can be had on exceptions to the master's report.

(7.) On Nov. 1, 1851, the York & Cumberland Railroad Company deeded in trust and mortgage to Toppan Robie, John Anderson and Nathan Clifford, from whom the title has passed to Levi Morrill, Charles Q. Clapp and Edward H. Daveis, who are parties defendant.

As this is subsequent to the mortgage to Myers, the trustees acquired only the right of redeeming therefrom. Nothing has occurred by which the priority of the Myers mortgage has been impaired or the superior rights of the bondholders have been diminished.

(8.) On Jan. 1, 1857, the York & Cumberland Railroad Company deeded, in trust and mortgage, all its existing rights of franchise and property to James Hayward, William Willis and James C. Churchill. James Hayward declined the trust, and it became vested in Nathan L. Woodbury, who, with the other trustees, are parties defendant.

This conveyance is subsequent in time and is subject to the prior rights of the preceding mortgagees. It conveyed whatever the company then owned and no more, and gave the trustees the right of removing prior existing incumbrances.

The title thus acquired is distinct from and not in conflict with, but in subservience to that *of* the mortgage of Feb. 6, 1851, which they acquired by assignment from Myers.

It will be perceived that the two mortgages in trust, of the

railroad company, are of no material importance in the view we have taken of the cause, but the result of this litigation, so far as we are now called upon to decide, must depend upon the mortgage to Myers.

(9.) The bill in its original inception was by Smith, Mason and others, representing the holders of the Herrick and Emery bonds. A part of the complainants claim to discontinue the bill on their part. The respondents might have insisted upon costs, before the discontinuance was permitted, but as they have not so done, no reason is perceived against allowing the discontinuance as prayed for.

(10.) It seems, that some of the complainants transferred the bonds, by virtue of the ownership of which they are entitled to prosecute, to John B. Carroll, by whom the supplemental bill is filed. A supplemental bill, when properly before the Court, is an addition to the original bill and becomes a part of it, so that the whole may be taken as an amended bill. *Gillet* v. *Hall*, 13 Conn., 456. In *Fellowes* v. *Deere*, 3 Beavan, 353, liberty was given to amend by striking out the names of several co-plaintiffs and suing by one in behalf of others similarly situated, security being given for costs. "When the complainant sells his whole right in the suit, or it becomes vested in another by operation of law," says WALWORTH, Ch., in *Mills* v. *Hoag*, 7 Paige, 18, "whether before or after a decision, if there be any further litigation in the case, it cannot be carried on in the name of the original complainant, by the party who has acquired the right. And, if the complainant's interest is determined by a voluntary assignment, the assignee must make himself a party to the suit, by an original bill in the nature of a supplemental bill, before he can be permitted to proceed. Mitford's Pl., 65 ; *Binks* v. *Binks*, 2 Bligh, 593." The same principle was affirmed in *Van Hoak* v. *Throckmorton*, 8 Paige, 33.

(11.) The bill is prosecuted by Carroll, as one of the bondholders, secured by the Myers mortgage for himself, and all others entitled to the protection of that mortgage.

That, in certain cases, a suit may be instituted by one for himself and others in like condition, seems well determined by all the authorities. " It is well settled," remarks SARGENT, J., in *March* v. *Eastern R. R. Co.*, 40 N. H., 566, " that where the parties interested are numerous and the suit is for an object common to them all, some of the body may maintain a bill in behalf of themselves and others having a like interest, but, in all cases where one or a few individuals of a large number institute a suit in behalf of themselves and others, they must so describe themselves in the bill." In *Taylor* v. *Salmon*, 4 M. & K., 142, Lord COTTENHAM says, the rule " that, where parties are numerous, and the suit is for an object common to them all, some of the body may maintain a bill in behalf of themselves and others, is established." In *Wallworth* v. *Hall*, 4 M. & C., 649, the same learned Chancellor observes, that " where it becomes impossible to work out justice if the rule requiring all persons interested to be parties were not departed from, it must be relaxed rather than be allowed to stand as an obstruction to justice." The bondholders, secured by the mortgage to Myers, are numerous. They constitute a fluctuating body. They are unknown to each other. The bondholders of to-day may cease to be such to-morrow. No one can compel another to act. Yet their interest is homogeneous. The right of one bondholder secured is the right of all. If the bill cannot be maintained by one or more for all, the plaintiff is remediless. If maintained, the rights of all can be preserved, protected and enforced. Where, as in this case, one sues for many, the Court will carefully guard the rights of the absent. The general rule is, that all parties interested in the subject of the suit, shall be parties to the record. "Then," observes the Vice Chancellor, Sir JOHN LEACH, in *Long* v. *Yonge*, 2 Sim., 369, "there are certain exceptions. One exception is, where several persons having distinct rights against a common fund, or against one individual are allowed, a few of them, on behalf of themselves and the rest, to file a bill for the purpose of

prosecuting their mutual rights against the common fund, or the individual liable to their demand." Story on Eq. Plead., § 111, and the following sections.

"The rule is well established," remarks NELSON, J., in *Smith* v. *Swomestedt*, 16 How. U. S., 288, "that, where the parties are numerous and the suit for an object common to them all, some of the parties may maintain a bill in behalf of themselves and of the others."

But all parties are desirous of an early decision as to the various matters in controversy, and have waived all questions as to the sufficiency of parties or the structure of the bill as first drawn, or as subsequently amended.

The bill prays that the trustees now holding the Myers mortgage may be compelled to account, and that the mortgaged estate may be sold and the proceeds distributed among the various creditors of the company in the order of their priority.

The bondholders, the *cestui que trusts*, have a right to demand an account of the funds received by the trustees and to require their distribution.

The bondholders are entitled to the payment of their dues. They have a right to the proceeds of the estate pledged for their security. The trustees are bound to see that funds therefrom are realized as soon as it can be done with a due regard to the interests of all. To that end, the Myers mortgage should be foreclosed, and when this is done, the foreclosed estate should be sold and the proceeds distributed according to the legal rights of the different classes of creditors of the corporation.

This bill relates only to the bondholders secured by the mortgage to Myers, and is to enforce their claims. It would be premature to discuss the effect of the other conveyances to which our attention has been called, except so far as they have a bearing upon the matters now presented for adjudication.

A master must be appointed, whose duty it will be to state the accounts of the respondents—trustees of the Myers

mortgage,—to determine how many bonds have been issued by the corporation which are secured thereby, &c., &c., &c.

TENNEY, C. J., CUTTING, MAY and GOODENOW, JJ., concurred.

The case was accordingly sent to a master to determine, (*inter alia,*)

1. The number and amount of bonds issued by the railroad company under the construction contract and mortgage, and those outstanding; to whom the same were due; the amount thereof including interest or coupons for interest; and to receive and return the same into Court with his report.

2. How much was due upon the construction contract for which no bonds had been issued, and which was still secured by the mortgage; and to whom the same was due.

The case came again before the Law Court (July term, 1864,) on exceptions to the master's report.

No copy of the exceptions came into the hands of the reporter; but it seems that the respondents excepted to the allowance by the master of the "Herrick bonds;" and that Mr. F. O. J. Smith excepted to the refusal of the master to pass upon the validity of the second and third mortgages of the corporation, referred to in the supplemental bill, and the answer; and to his refusal to allow certain amounts paid by said Smith as indorser of company notes, the avails of which were applied in payment of the construction contract; and the claim of said Smith to be the equitable assignee of one-fifth of the judgment recovered by Myers against the company, for non-fulfilment of the construction contract.

The facts upon which the exceptions are founded are sufficiently stated in the opinion.

*F. O. J. Smith, pro se.*

[His argument upon his first and third exceptions is omitted, as the Court held that these points were not open to him in this case.]

In support of his second exception, he says : —

The notes and judgment already paid by Smith, each being parts of the construction cost of the road, went to the reduction of the amount payable to Myers in bonds. By the terms of the contract and mortgage, payments were to be made in cash and bonds, and all the construction contract unpaid was to be ·secured by mortgage. The notes in question were given by the company in lieu of cash payments, and were never paid by the company. Hence, these amounts of the construction contract were never paid, and the equity of the mortgage security follows these notes for payment, on the same basis as it follows the Herrick bonds, whether specifically named or not in the mortgage, and constitutes a part of the construction debt of the contract, for which the mortgage was made expressly security. The ruling of the Court on the Herrick bonds in principle manifestly covers these unpaid notes, indorsed by the directors.

*Evans*, for the respondents.

The opinion of the Court was drawn by

APPLETON, C. J. — On the 5th of August, 1850, John G. Myers entered into a contract with the York & Cumberland Railroad Company for the construction of their railroad. This contract was modified by the parties on the 6th Feb., 1851, on which day the railroad company gave said Myers a mortgage of all their real and personal estate, to secure the performance of this contract, and the payment of bonds issued in pursuance of its provisions.

When this case was under consideration at the hearing on bill, answer and proof, it was held that the bonds issued under the terms of the construction contract had priority of security over the contract — but that both were secured by the mortgage.

This bill is brought by the bondholders to enforce the payment of their debts by a foreclosure of the mortgage to Myers, and a sale of the mortgaged property.

(1.) Exception is taken to that part of the master's report by which the Herrick bonds, so called, were allowed.

The facts in relation thereto, and the conclusion of the master upon those facts, are thus stated by him in his report.

"The whole number of this class of bonds known by the designation of the Herrick bonds, which have been presented and filed or claimed before me, is twenty-four, amounting in all to the sum of nineteen thousand and five hundred dollars and interest, so far as interest may now be due thereon.

"From the records and other evidence, which have been presented to me, I am fully satisfied that the same were issued without any authority existing in the officers who issued them by virtue of a specific vote previously passed or existing at the time of their issue, and I am equally well satisfied that they were issued in payment of and were allowed towards liabilities of the company, which accrued under the construction contract with John G. Myers; and that said company, by their subsequent votes and action, have fully ratified and adopted the acts of the officers, who issued the said bonds, and have thus made the company liable for the same and the interest due thereon. They are in fact the bonds of the company, issued in payment of their indebtedness to Myers under the construction contract, and were allowed thereon. * * * I do further determine the said bonds, called the Herrick bonds, are secured by the mortgage from said company to said John G. Myers."

That part of the condition of the mortgage which is descriptive of the bonds to be secured, is in these words, "each of these said bonds numbered consecutively from one to the sum total thereof, requisite for the completion of said road according to said contract, and each being issued only by the previous specific vote of the said directors, at their meeting duly notified."

The mortgage referred to secures to Myers the construction contract and the bonds issued and delivered him in part payment of the same.

The Herrick bonds answer all the requirements of this

condition, save that they were issued without "the previous specific vote of the directors." Instead of which, their validity deponds on their subsequent adoption and ratification.

These bonds, though improvidently issued, were received by Myers in reduction of the amount due upon the construction contract. The York and Cumberland Railroad Co. have received the same benefit from them as if they had been issued in pursuance of a previous vote of the directors. By its subsequent action, the company has approved and ratified the unauthorized acts of its officers. And well it might, for it has received all the benefit it could have ever hoped to receive from these bonds. They have liquidated the indebtedness arising under the construction contract and they could have done no more, howsoever regularly issued. The company cannot, therefore, except to any irregularity on the part of its officers in issuing these bonds.

Nor can Myers take exception thereto. He has credited their amount on the construction contract. He has transferred them to the holders as valid, and has received an adequate consideration therefor. It is not for him to allege that he has been guilty of fraud in their transfer.

The trustees of the York and Cumberland Railroad Co. are the assignees of Myers. They succeed to his rights, and are in the same condition as their assignor.

The holders of the bonds previously issued, and to which there are no objection, have no right to except. The Herrick bonds, if regularly issued, would have stood on an equality with the previous bonds of the company. They equally reduced the sum due on the construction contract, and are equally entitled to the protection of the mortgage given to Myers. The irregularity in their issue was one the company might waive, and, having waived it, they cannot now take advantage of it. *Omnis ratihabitio retrotrahitur et mandato priori æquiparatur.* The mortgage was given to secure the construction contract and bonds issued in payment thereof. These bonds were so issued. They answer the description in the mortgage in all respects save one,

and, so far as relates to that, the company are estopped from relying upon it, if it was ever available. They are within the equity of the mortgage. Neither the other bondholders nor the mortgagers can interpose any valid objection to their allowance.

(2.) The master disallowed certain judgments against Mr. Smith, which he paid as indorser of certain notes for the York & Cumberland Railroad Company, the proceeds of which he claimed hâd been applied to the reduction of the construction contract, though, that they were so applied does not seem to have been in proof.

But if Mr. Smith indorsed for the company, he must look to them for the remuneration to which he is equitably entitled. The mortgage secures only the construction contract and the bonds issued in payment thereof. It is no security to every laborer, whom Myers may have employed, nor to every capitalist, who may have advanced him money towards the completion of the contract. Nor is it a security to those who may have loaned their credit or their capital to the company, though they may have been applied to the construction of the road. If the proceeds of the notes indorsed were paid to Myers, they, to that extent, reduced the amount on his contract, and can only confer rights in favor of Smith against the railroad corporation.

(3.) It is admitted by the parties that "the deeds and contracts so filed, purporting to be the deeds and contracts of said railroad company, were executed by the proper officers of said company, duly authorized thereto by votes of the directors of said company, at meetings duly held for that purpose." This agreement renders it unnecessary to consider the validity of the second and third mortgages and the bonds secured thereby.

(4.) The legal title to the judgment, *Myers* v. *York & Cumberland Railroad Company*, is in the defendant trustees. If Mr. Smith is the owner in part of that judgment, it is as equitable assignee or as having an equitable lien. Whether his title is one which a court of equity would sus-

tain, is not a question now properly before us. The bill is by the holders of the first mortgage bonds and to enforce their payment. It sets forth no such claim on his part as to this, and, if it had, a demurrer might have been properly filed on the ground of multifariousness. Neither by bill nor answer is the title of Mr. Smith to a portion of this judgment presented for our consideration. The bill contains no prayer for any decree in relation thereto, nor could one properly be made.

If it were necessary for the decision of the cause, it would seem that the report of the master is conclusive as to facts. "When the Court refers it to a master to examine and report as to the existence or non-existence of a fact or as to any other matter," remarks WALWORTH, Ch., in the matter of *Hemiup*, 3 Paige, 307, "it is his duty to draw the conclusions from the evidence produced before him, and to report that conclusion *only*. And it is irregular and improper for him to set forth the evidence in his report, without the *special* direction of the Court. * * He must himself draw all the conclusions of fact as in a special verdict, leaving the question of law alone for the decision of the Court."

*Exceptions to the report of the master overruled.*
*Report of master accepted.*

CUTTING, DAVIS, KENT, WALTON, DICKERSON and BARROWS, JJ., concurred.