## Case No. 3,915.

### DILLON v. BARNARD et al.

[1 Holmes, 386.][1]

Circuit Court. D. Massachusetts. Sept., 1874.[2]

EQUITY PLEADING—DEMURRER—RAILROAD MORTGAGES—CONSTRUCTION.

1. A demurrer to a bill in equity admits only facts well pleaded in the bill; not averments of conclusions of law, nor as to construction of

---

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

[2] [Affirmed in 21 Wall. (88 U. S.) 430.]

documents or parol agreements inconsistent with written agreements alleged in the bill.

2. A provision in a mortgage of the property and franchises of a railroad corporation to trustees, made to secure certain mortgage bonds to be issued thereunder for the purpose of providing for and retiring the then existing mortgage debt and prior liens on the railroad, and completing and equipping the road; that the expenditure of all sums realized from the sale of the bonds "shall be made with the approval of at least one of the trustees, whose assent in writing shall be necessary to all contracts made by the" corporation "before the same shall be a charge upon any of the sums received from said sales," does not create a charge upon the proceeds of the sales of the mortgage bonds, in favor of one who afterwards built a portion of the road under a written contract with the corporation, which contract did not itself impose such charge.

[See note at end of case.]

Bill in equity by a creditor of the Boston, Hartford, and Erie Railroad Company [Sydney Dillon], against the assignees in bankruptcy of that company [George M. Barnard and others], and the trustees under a mortgage of the property and franchises of the corporation, made to secure certain mortgage bonds issued for the purpose of paying the existing mortgage debt of the railroad and discharging prior liens thereon. A large amount of money was due the complainant from the company for the construction of a portion of its road under a written contract, and his claim was, in substance, that, according to the terms of the mortgage and his contract with the company, assented to by the trustees under the mortgage, a charge was created in his favor upon the proceeds of the sales of the bonds issued under the mortgage; which proceeds had not been applied to payment of his debt. The defendants demurred to the bill. The material parts of the mortgage and the complainant's contract with the company, and the facts, are stated in the opinion.

S. Bartlett and J. J. Storrow, for complainant.

C. S. Bradley, W. G. Russell, and Lothrop & Bishop, for defendants.

SHEPLEY, Circuit Judge. This case is presented on a demurrer to the bill in equity. The material averments of fact which the demurrer admits are as follows: That the Boston, Hartford, and Erie Railroad Company, a corporation duly existing under the laws of Massachusetts, Rhode Island, Connecticut, and New York, was, prior to the first day of March, 1866, authorized to construct, maintain, and operate a railroad in each of said states, and owned the railroad and franchises described in the bill; that, for the purpose of providing for and retiring all the existing mortgage debt and prior liens upon the line of the railroad of said corporation, and for the purpose of completing and equipping its railroad, then only partly constructed, the corporation, by a mortgage deed or

indenture in trust, on the nineteenth day of March, 1866, conveyed to Robert H. Berdell and others, trustees, all its property, then owned and after to be acquired, in trust, upon the terms and for the purposes set forth in the mortgage deed, which indenture in trust or mortgage was ratified and validated by, the legislation of the several states of Massachusetts, Rhode Island, Connecticut, and New York.

The bill alleges that, among other things, it was provided in the indenture that certain bonds or evidences of debt, to an amount named in said indenture, should be issued, sold, and disposed of, as the means and for the purpose of raising money to complete and equip the road; that such bonds, attested by the trustees, should be secured by said indenture, and become a lien upon the property therein described and conveyed, and also upon all the property afterwards purchased, and on the increase of value in the railroad given to it by the expenditure of the money raised by the sale of the bonds. It is also alleged that it was agreed by said indenture, and was a part of the trusts and terms under which the trustees held and were to hold the trust estate, that the expenditure of all sums of money realized from the sale of the bonds issued under the mortgage should be made with the approval of at least one of the trustees, whose assent in writing should be necessary to all contracts made by the railroad corporation for the purposes aforesaid, before the same should be a charge upon any of the sums received from such sales; and also alleges "that such contracts, to be assented to, should and would be a charge upon such sums so received and realized by or from such sales." This last averment must be understood as the allegation of what complainant claims to be the legal inference resulting from the terms of the contract, as no such provision is anywhere expressed in terms in the mortgage, which is made part of the bill and the record in the case.

Afterwards, on the 24th of October, 1867, the complainant, Dillon, entered into a contract with the corporation, in writing, which was approved and assented to in writing by the trustees, for the construction of a certain portion of said road. It is alleged to have been the purpose, object, and intention of the corporation. the trustees, and the complainant, that the sums becoming due under the construction contract should be a charge on the sums to be received from sales of the bonds; that the complainant performed work and expended large sums of money under the contract, relying for his compensation on the sums of money to be derived from sales of bonds, and upon a lien thereon, by virtue of the premises, and that his reliance thereon was well known to the corporation and the trustees; that his work under the contract was performed and accepted, and approved in accordance with the stipulations in the contract; and that a balance is due to him of $1,030,693.29, with interest. The bill alleges that, instead of devoting the proceeds of the sale of the bonds to the payment of complainant, the corporation and the trustees suffered the money to be expended in acquiring new property to be held under the indenture, and in improving and increasing the value of the property already held under it; and that the value of the new property acquired and the increased value of the old property held under the indenture greatly exceeded the amount due to the complainant. The defendants, Hart, Oliphant, and Clark, became legally the successors of Berdell and others, as trustees under the mortgage, and, before the filing of the bill, entered into possession under the mortgage of all the property covered by it, and commenced proceedings to foreclose the same. The corporation is alleged to be insolvent and without means, except property covered by the mortgage, and in bankruptcy, and the assignees in bankruptcy are made defendants.

In substance, the claim of the complainant is, that the money received from the sales of the Berdell bonds was to be expended in building and equipping the railroad, which was to be held by the trustees in mortgage as security for the bondholders; that a part of the money due to the complainant for building the railroad, which has passed into the possession of the trustees under the mortgage, has been withheld from him and applied to the purchase of other property, which the contract did not contemplate should be bought and conveyed to the trustees, but which has been conveyed to them; and the complainant seeks to follow this property, upon the ground, as he claims, that the contract between him and the corporation, in connection with the terms and conditions of the mortgage, constituted in equity a charge upon the sums received from the sales of the bonds. As far as possible, the averments of matters of legal inference and of conclusions of law, and of the construction of documents, have been omitted in the statement of the allegations in the bill of complaint. The demurrer does not admit the truth of such allegations, but only such facts as are well pleaded. 2 Mitf. Eq. Pl. 227; Story, Eq. Pl. § 452; Daniell, Ch. Pl. 560; Commercial Bank of Manchester v. Buckner, 20 How. [61 U. S.] 108; Ford v. Peering, 1 Ves. Jr. 72. So far as the allegations in the bill are concerned which set up what are alleged as understandings between the parties, whether they refer to matters contained in the written agreement or indenture, and may be taken to be averments of conclusions of law from the agreements, or whether they refer to parol agreements incompatible with the written agreements, the questions as to the correctness of the legal conclusions in the one case, or the

admissibility of the parol evidence in the other, are open to the defendants on demurrer. Lea v. Robeson, 12 Gray, 280.

The mortgage in trust, after reciting the authority given to the directors of the company to make a mortgage upon the whole or any portion of the road, and to issue and dispose of their mortgage bonds to the amount of twenty millions of dollars, payable in New York, excepting such portion as the directors should authorize to be payable in London in sterling currency, declares the purpose of the mortgage to be to secure the "bonds to be issued, for the purpose of providing for and retiring all the existing mortgage debt and prior liens upon the line of the road of the party of the first part, and for the purpose of completing and equipping their road, and of laying down a third rail, so as to form an additional track corresponding with the gauge of the Erie Railway of New York." The form of the bonds to be secured by the mortgage was recited in the mortgage deed. Each bond to be issued contained a statement on its face that it was one of a series of twenty thousand bonds issued for the purpose of paying the existing debt of the company, and of completing and equipping their road. The bond also on its face purported to be secured by a mortgage of the railroad and franchises, furniture, and equipment of the company to the trustees, "which is to be the first and only lien on the property and franchises of the company, when the existing mortgage debt is retired, to meet which a corresponding portion of this issue of bonds is placed in trust in the hands of said trustees."

Again, the indenture itself declares "that the parties of the first part, for the better securing and more sure payment of the sums of money mentioned in the said mortgage bonds, and each of them, according to the tenor thereof," . . . have granted, &c., to the parties of the second part (i. e. the trustees) all and singular the railways, &c. (describing the railways and lands of the corporation), with all the personal property, and privileges, franchises, leases, and charters, "also, all the like estate, roads, railroads, and structures, and matters and things pertaining or belonging thereto, that may be hereafter acquired or constructed, or belong to or be controlled by the party of the first part." The indenture then witnesseth that it is made, and the mortgage bonds and obligations intended to be secured by it are made, executed, and delivered, upon the terms, conditions, and agreements following, the most important of which, and the one upon which the complainant principally relies, is the sixth condition in the indenture, which is: "That the expenditure of all sums of money realized by or from the sale of the bonds issued under this mortgage shall be made with the approval of at least one of the said trustees, whose assent in writing shall be necessary to all contracts made by the party of the first part before the same shall be a charge upon any of the sums received from said sales."

The allegation in the bill is, that it was agreed by the indenture "that such contracts so assented to should and would be a charge upon such sums so received and realized from such sales." There are no such words in the indenture. The allegation, therefore, is one of those allegations of conclusions of law or legal construction of a document which are not admitted by, but are open on, the demurrer. Upon a careful consideration of the whole indenture, its scope, intent, and purpose, and especially of the sixth clause, in which alone the word "charge" is used, it must be determined whether that word was used in its strict and technical sense, or only in a more general sense, in a covenant that the corporation itself would make no expenditures of any money realized from the sale of the bonds, or any contract calling for such expenditure, without the approval of one of the trustees. This sixth clause in the indenture is a covenant on the part of the corporation, party of the first part, with the trustees for the bondholders, party of the second part; a covenant the intent and purpose of which was in aid of what is declared to be the purpose of the indenture itself, "for the better securing and more sure payment of the sums of money mentioned in said mortgage bonds, and each of them, according to its tenor."

Therefore, as the money from the sale of the bonds was to be raised for the purpose of retiring existing mortgage debts and prior liens on the mortgaged property, and for the purpose of completing and equipping the road and laying down a third rail, the corporation provided for the application of a portion of the bonds to the retiring of existing prior incumbrances, by the provision in the indenture for placing the bonds requisite for that purpose in the control of the trustees, thus adding to the security by the extinguishment of prior liens, and requiring the assent of the trustees to expenditures and contracts for expenditures, that they might have the power so to control them that the proceeds of the bonds should be expended in such a manner as to further the purpose of the mortgage by adding to the security of the bondholders. The trustees were bound to see that the expenditure would tend to "the better securing and more sure payment of the mortgage debt," and also that it was for one of the purposes declared in the mortgage. There is no allegation that the expenditures approved by the trustees were for purposes other than those declared to be the purposes of the indenture, or that they did not tend to "the better securing and more sure payment of the sums of money mentioned in said mortgage bonds."

It is not charged that the expenditures were

for purposes other than those "of completing and equipping the road and laying down a third rail," or that they impaired the security of the bondholders. On the contrary, the averment is that they "caused the same to be expended in acquiring new property to be held under said indenture, and in improving and increasing the value of property already and since always held by said trustees under said indenture." This was the very purpose of requiring the assent of the trustees to the contracts and expenditures, that they should be devoted to acquiring new property and adding new values to the old property held and to be held under the mortgage.

Examining the question, therefore, first in the light given in relation to the duties of the trustees by the terms of the trust indenture itself, their full duty would seem to have been faithfully discharged when they approved only such expenditures or contracts as extinguished prior incumbrances, or otherwise bettered the security of the bondholders, by such "completing and equipping their railroad" as added to the value of the old or resulted in the acquisition of new property to be held under the mortgage. The mortgage itself clearly does not contemplate that if the trustees approved several distinct contracts for the completion of distinct portions of the road, and also others for equipping the road, that either the trustees or the bondholders were to see that the assets were marshalled and the sums realized from the sales of the bonds ratably apportioned among the several contractors, or paid to them in the order in which their contracts were executed, or in the succession in which they became due and payable; or that the trustees were to receive or have control of the bonds or the proceeds of the sales of the bonds, so as to be able to make such appropriation, except, perhaps, in the case of the bonds set apart for the retiring of the then existing mortgage debt and debts which constituted a lien on the property. The corporation itself only covenanted that it would so expend the moneys received from the sale of the mortgage bonds as to add to the security. This is the substance of their covenant; and it is not the subject of complaint in this bill that the mortgage security has been diminished, but that it has been added to and increased, (as complainants claim, wrongfully increased), not, however, to the injury of any parties to the indenture, but of one of the persons who, subsequently to the trust mortgage, contracted with the mortgagor.

The sixth condition in the mortgage does not of itself create any charge upon the money proceeds of the sales of the bonds. If the word "charge," in this proviso, is to be construed as used in its strict and technical sense, then it is simply a covenant on the part of the corporation that it will not create such a charge upon the money proceeds without the assent of the trustees. It is not a creation of a charge by the assent of the trustees, but a covenant not to create a charge by the act of the corporation without the assent of the trustees. The corporation had the power, by taking the requisite steps, to create a charge upon the money proceeds. The money was to be expended by the corporation, not by the trustees. It was in the power of the corporation to expend the money for any contract it should choose to make, approved by the trustees, for equipping and completing the road. It was in its power to create, by agreement between all the parties, a charge upon the moneys in favor of any one or of all the contractors; but, under the limitation of the sixth clause, it could not do so without the assent of the trustees. But, even with the assent of the trustees, to create such a charge upon so fugitive a subject of charge as money, which has no earmark, would require evidence of the most unmistakable language in whatever agreement or indenture is relied upon to establish the charge. There certainly is no such agreement in this indenture. It is not enough to create such a charge that the property may have been acquired or the fund created through the efforts or outlays of the party claiming the lien. Wright v. Ellison, 1 Wall. [68 U. S.] 16. Where, then, are we to look for the evidence that the corporation itself has agreed to create such a charge, and that the trustees have assented to such agreement?

The complainant was not a party to the indenture, and, prior to the filing of the bill, does not claim to have asserted any rights under it. The contract of the complainant with the corporation for the construction of a portion of the road does not undertake to create, and does not create, any charge upon the money proceeds of the bonds. No agreement is therein made for any such charge or lien, nor can it be seriously contended that any such charge or lien is created by any necessary implication from the terms or scope of the contract. The assent of the trustees to the contract, therefore, was no assent to an agreement for a charge on the funds, there being no such agreement in the contract. Nor was it in the power of the corporation and the trustees combined to create a charge or lien on the property covered by the mortgage, which would take precedence of that of the trustees of the bondholders, which, by the express declaration in the indenture itself, was to be "the first and only lien on the property and franchises of the company." The bondholders advanced their money upon the faith of the security on the existing property and value of the road and its appurtenances, and the property and value to be added by the expenditure of the money advanced by them. The mortgage assumed to secure them on "the like estate. roads, railroads, and structures. and matters and things pertaining or belonging thereto. that may be hereafter acquired or constructed, or belong to or be con-

trolled by" the corporation. These several items of property, as they came into existence, would become instantly attached to and covered by the deed, and would have fed the estoppel created thereby. Galveston, H. & H. R. Co. v. Cowdrey, 11 Wall. [78 U. S.] 459; Dunham v. Cincinnati, P. & C. R. Co., 1 Wall. [68 U. S.] 254; Pennock v. Coe, 23 How. [64 U. S.] 117.

As no property has been acquired under the mortgage, except such as by its terms was to be subject to the first and only lien under the mortgage in favor of the bondholders, the "charge" in favor of complainant, if any agreement for such charge had been made, and if such agreement had been assented to by the trustees, would have been subordinate to the first lien created by the indenture. The advances made by the bondholders were made upon the faith of such security, and the fact that complainant's labors had added to the security of the bondholders would not subordinate their lien to his, if he had one. Mason v. York & C. R. Co., 52 Me. 82; Willink v. Morris Canal & Banking Co., 3 H. W. Green, Ch. [4 N. J. Eq.] 377; Galveston, H. & H. R. Co. v. Cowdrey, 11 Wall. [78 U. S.] 459; Dunham v. Cincinnati, P. & C. R. Co., 1 Wall. [68 U. S.] 254. Demurrer sustained. Bill dismissed, with costs

[NOTE. Complainant took an appeal to the supreme court, where the decree was affirmed. Dillon v. Barnard, 21 Wall. (88 U. S.) 430 That court, speaking through Mr. Justice Field, said, among other things: "The instrument was executed to secure the payment of the mortgage bonds. It so declares on its face. It nowhere indicates any design to secure the contractors. Its language is 'that for the better securing and more sure payment of the sums of money mentioned in the said mortgage bonds, and each of them,' the indenture is executed. And the clause in question was intended to increase this security by preventing a wasteful expenditure of the funds of the corporation. It is, in fact, an agreement on its part that the funds received from the bonds shall only be used with the approval of one of the trustees, and without his written assent no contracts shall be payable out of those funds. The term 'charge' is not used in any technical sense, as importing a lien upon the funds, but in the general acceptation of a claim that may be payable out of them. The contractors are not parties to the indenture, and are not entitled to claim, as against those parties, any benefit under its provisions, except that, upon the assent being given to their contracts, the use of the moneys for their payment is permissible. They are, so far as the agreement is concerned, strangers to the instrument. The written assent to contracts on the part of one of the trustees was not required for their protection, but as an additional safeguard to the bondholders against an improvident use of the funds by the corporation. The clause is one of a series of covenants on the part of the corporation with the trustees, intended to secure the application of the funds received to the purposes contemplated at the time the indenture was executed.—the retirement of the existing indebtedness of the corporation, the completion of its road, and the laying of a third rail. The full effect is given to the language of the clause in question by this interpretation."]